STATE OF NEW JERSEY v. ANNIE J. MARTINI.

Argued June 8, 1910—Decided November 25, 1910.

1. A married woman, engaged by her husband in his store in the sale of obscene cards, is presumed in law to be selling the same under his coercion, and the common law which exempted her from legal responsibility for such act still subsists in this state.
2. Where the evidence of such fact is clear and unequivocal a verdict of acquittal should be directed.

On error.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and MINTURN.

For the plaintiff in error, *Theodore W. Schimpf.*

For the defendant in error, *Clarence L. Goldenberg.*

The opinion of the court was delivered by

MINTURN, J. The assignments of error in this cause present various questions for consideration, but the case is determinable upon the disposition of one, and that the main question presented by the record.

The defendant was indicted and convicted for violating the fifty-third section of the Crimes act (*Pamph. L.* 1898, *p.* 808), which makes it a misdemeanor for any person without just cause to utter or expose to view, or have in his possession with such intent, or to sell any obscene or indecent book, picture, &c. The record shows that she was a married woman, living with her husband, who conducted a picture postal card establishment at Atlantic City. One George Herbert testified for the state that he, with another, entered the place and asked the husband to supply them with jigger soap cards. Defendant at the time was waiting upon some ladies in the store, but the husband told the witness that the defendant would wait upon him when she would be at leisure. Shortly

after the husband called defendant and told her to wait upon the witness, and she then in obedience to this direction supplied to the witness the jigger soap cards, which are admittedly obscene and indecent, and which were the cards produced upon the trial. When the witness entered the store the husband was seated in the rear of the place, and while the wife was carrying out his instruction and waiting upon the witness, he retired into a back room, which was separated from the store only by curtain hangings.

The defendant's testimony was of a cumulative character, and emphasized the situation so far as the immediate presence of the husband was concerned.

This situation, at the close of the case, led to a motion in behalf of the defendant for the direction of a verdict of acquittal, which motion the learned trial court denied. The motion was predicated upon the proved and apparently undisputed fact that the husband, being upon the premises and in a position where his presence could influence the conduct of the defendant, the law absolved her from guilt, in the absence of any testimony from which it might be claimed that the presumption of law of the existence of coercion on the husband's part was legally rebutted.

We think, under these facts and circumstances, the defendant was entitled to a direction of acquittal.

In *Emmons* v. *Stevane*, 44 *Vroom* 349, this court held that the common law rule, which excuses a wife from liability for a tort committed by her in the presence of her husband, prevails in full force in this state. That case was reversed upon another ground by the Court of Errors, but the doctrine in question was approved in the opinion.

The doctrine thus applied to a case of tort feasance was substantially a reiteration of the law as promulgated thirty years earlier in *Hildreth* v. *Camp*, 12 *Vroom* 306, and which remained unquestioned during that interim.

The rule thus applied is but the application in that branch of the law of the general common law doctrine applicable to the *status* of the wife in every department of the common law, the effect of which was that both her property and her

personality were subjected to the will and dominion of her husband. "Therefore," says Blackstone, "if a woman commit theft or burglary or other civil offences against the laws of society by the coercion of her husband, or even in his company, which the law construes a coercion, she is not guilty of any crime, being considered as acting by compulsion and not of her own will" (Book 4, page 28). In the theory and spirit of the law she, under the marital relation, was deprived of the free will and consent necessary to the commission of crime, and she was therefore accorded the legal *status* of a servant or slave, so that Blackstone was enabled to apply to her the rule of the civil law, *"procul dubio quod alterum libertas alterum necessitas impelleret"* (*Id.* 29). So it has been consistently held in all jurisdictions that have inherited the common law, except where the rule is changed by statute, that where the married woman commits an offence (except probably murder and manslaughter, *Hale P. C.* 47), in the presence of her husband or, though not in his presence, near enough to be under his immediate influence and control, she is presumed to have acted not voluntarily but under his coercion, and he is responsible while she is excused. 1 *Hale P. C.*, § 10; *Com.* v. *Neal,* 10 *Mass.* 152; *Davis* v. *State,* 15 *Ohio* 72; *Roberts* v. *People,* 19 *Mich.* 401; *Mulvey* v. *State,* 43 *Ala.* 316.

That she was more active than he in the commission of the crime does not render her guilty, but is a circumstance to be considered in rebutting the presumption of coercion, for her guilt depends not on her activity but upon whether her activity was voluntary or caused by the husband's coercion. *State* v. *Houston,* 29 *S. C.* 108.

The test of his presence does not require proof of a formal command on his part to her to do the act, but rather is limited to the inquiry whether his proximity could have exerted an immediate influence and control over her. In *Com.* v. *Burk,* 11 *Gray* 437, the husband was not in the store, but was on the premises when the wife made an illegal sale of intoxicating liquors, and she was held guiltless. So where he was not in sight, it was held his momentary absence did not relieve her

from his influence and control.  *Com.* v. *Munsey,* 112 *Mass.* 287.

The case for the state and the entire evidence in the case at bar shows not only the presence of the husband in the store, but his reception of the customer, and his direction, equivalent at common law to a command, to the wife to wait upon the customer, and her obedience to his wish, while he at all times during the sale was within her view and call. This situation furnishes the *status* that at common law absolved the wife from guilt in the absence of testimony rebutting the presumption.  Finding no such testimony in this case we think the learned trial court should have directed an acquittal.

The judgment of conviction will therefore be reversed.